UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| WIAV SOLUTIONS INC. and WH PATENT HOLDINGS, INC., | |
| Plaintiffs, | **ORDER** |
| - against - | 18 Civ. 2595 (PGG) |
| HTC CORPORATION, | |
| Defendant. | |

PAUL G. GARDEPHE, U.S.D.J.:

In this diversity action, Plaintiffs WiAV Solutions Inc. ("WiAV") and WH Patent

Holdings, Inc. ("WH Patent") claim that Defendant HTC Corporation breached a contract

between WiAV and HTC involving patent rights (the "Contract").  Under the terms of the

Contract, HTC was obligated to transfer certain patent rights to an entity designated by WiAV's

president.  WiAV designated WH Patent to receive the patent rights, but HTC refused to make

the transfer unless WiAV agreed to sign an addendum to the Contract.  Plaintiffs allege that the

addendum contains terms outside the scope of the Contract and that HTC has breached the

Contract by refusing to unconditionally transfer the patent rights to WH Patent.

HTC has moved to dismiss under Fed. R. Civ. P. 12(b)(6), arguing that (1) WH

Patent lacks standing to sue because it is not a party to – or a third-party beneficiary of – the

Contract; and (2) Plaintiffs' breach of contract claim fails because HTC agreed to transfer the

patent rights to WH Patent through the addendum.  For the reasons stated below, HTC's motion

to dismiss will be granted as to WH Patent, but will otherwise be denied.

**BACKGROUND**

I.     **FACTS**

A.     **The Contract**

Plaintiff WiAV is a Virginia-based corporation that acquires and licenses patent

rights in the area of wireless telecommunication technology.  (Cmplt. (Dkt. No. 1) ¶¶ 8, 13)

Defendant HTC is a Taiwanese manufacturer and developer of hardware and software for

smartphones and other wireless technologies.  (Id. ¶¶ 10, 14)  As relevant here, WiAV held the

rights to certain voice-coding patents, which it obtained from an unrelated third party (the

"Exclusive Vocoder Patent Rights").  (Id. ¶¶ 2, 15)

In June 2009, WiAV and HTC entered into the Contract, in which HTC agrees to

purchase rights associated with several patents.  (Id. ¶ 16)  In the Contract, WiAV agrees to

transfer the Exclusive Vocoder Patent Rights to HTC (id.), and HTC agrees to make three

installment payments to WiAV between July 2009 and July 2011.  (Id. ¶ 17)  There is no

allegation that HTC failed to make the three installment payments.  (Id. ¶¶ 17-18; see Def. Br.

(Dkt. No. 38) at 13)[1]

In addition to the three installment payments, HTC agrees in Section 3(b) of the

Contract to make additional payments to WiAV upon the occurrence of a Triggering Event.

(Contract (Dkt. No. 40-2) § 3(b)(iv))  As relevant here, a Triggering Event occurs under the

Contract whenever HTC "grant[s] a covenant not to sue, release, and/or any rights to or under

one or more Exclusive Vocoder Patent Rights . . . to any third party."  (Id. § 3(b)(i)(A)).

Payments due as the result of a Triggering Event – referred to in the Contract as "Conditional

Payments" – range from $3 to $4 million each.  (Id. § 3(b)(iv))  After HTC makes five such

---

[1]  Citations to page numbers refer to the pagination generated by this District's Electronic Case Files ("ECF") system.

payments, the Contract provides that Section 3(b) will become void, and HTC will owe no more

Conditional Payments.  (Id. § 3(b)(iv)(E))

Section 6(e)(i) of the Contract provides that

[i]f fewer than three (3) Triggering Events . . . occur prior to June l, 2015, HTC agrees to grant to an entity identified by Dr. Choongsoo Park or legal successor of Dr. Park (whereby such identified entity shall be owned by Dr. Park or his legal successor and hereafter be referred to as "Identified Entity"), on June l, 2015 the exclusive and sole right to sue, license, sublicense, assert, enforce, and/or otherwise grant rights, together with all of HTC's claims for and the right to collect damages by reason of past, current, and future infringement, under the Exclusive Vocoder Patent Rights in the Wireless Handset field of use against, from and to third parties; and further agrees, at Identified Entity's reasonable expense and upon request by Identified Entity, to assist any and all of Identified Entity's efforts relating thereto, including, without limitation, joining any lawsuit contemplated by Identified Entity as a plaintiff to the extent necessary to establish standing and utilizing diligent efforts to comply with Identified Entity's requests for assistance.  For clarification, after the grant to Identified Entity referenced in the immediately preceding sentence, Identified Entity shall possess any and all enforcement and damages related rights under the Exclusive Vocoder Patents, including, without limitation, the right to sue for past, current and future infringements, including the right to license and to collect and receive any damages, royalties, injunctive relief, and/or settlements for such infringements, provide releases for such past infringements, grant covenants not to sue for such infringement, and sue under any past, current or future patent causes of action relating to any of the inventions or discoveries claimed in the Exclusive Vocoder Patents within the Wireless Handset field.  Identified Entity agrees to share with HTC thirty-three percent (33%) of all proceeds, including past damages, resulting from any such assertion or licensing of the Exclusive Vocoder Patents within the Wireless Handset field of use by Identified Entity subsequent to such grant.  To the extent that HTC breaches any of its duties under Sections 4(a) and/or 6(e), HTC hereby stipulates that the remedies shall include, without limitation, HTC assigning, at no cost to Identified Entity, all of its rights under the Exclusive Vocoder Patent Rights to Identified Entity.

(Contract (Dkt. Nos. 40-2, 40-3) § 6(e)(i))

Section 6(n) of the Contract reads as follows:

No Third-Party Beneficiary.  Nothing is [sic] this Agreement shall be construed to give rise to any obligation on any party hereto for the benefit of a third party or to confer any rights on any third party.

(Contract (Dkt. No. 40-3) § 6(n))

The Contract contains the following integration clause:

> Entire Agreement. The terms and conditions of this Agreement, including its exhibits, constitutes the entire agreement between the Parties with respect to the subject matter hereof, and merges and supersedes all prior and contemporaneous agreements, understandings, negotiations and discussions.  Neither of the Parties shall be bound by any conditions; definitions, warranties, understandings, or representations with respect to the subject matter hereof other than as expressly provided herein.  The section headings contained in this Agreement are for reference purposes only and shall not affect in any way the meaning or interpretation of this Agreement.  No oral explanation or oral information by either Party hereto shall alter the meaning or interpretation of this Agreement.  No amendments or modifications shall be effective unless in a writing signed by authorized representatives of both Parties.  These terms and conditions will prevail notwithstanding any different, conflicting or additional terms and conditions which may appear on any purchase order, acknowledgment or other writing not expressly incorporated into this Agreement. . . .

(Id. § 6(g))

**B.      HTC's Alleged Breach and Interference with Plaintiffs' Contract Rights**

Only one Triggering Event occurred before June 1, 2015.  (Cmplt. (Dkt. No. 1) ¶¶ 4, 23)  Accordingly, pursuant to Section 6(e)(i) of the Contract, on October 14, 2017, WiAV notified HTC that the Enforcement Rights should be transferred to WH Patent, a Virginia-based corporation.  (Id. ¶¶ 9, 24 & n.1)  In response, HTC stated that it would transfer the Enforcement Rights to WH Patent only if WiAV signed an addendum to the Contract (the "Addendum").  (Id. ¶ 25; Addendum (Dkt. No. 40-6))  The Addendum includes the following clause:

> The Parties acknowledge and agree that WH Patent Holdings is not a third-party for purposes of the [Contract] or this Addendum.

(Addendum (Dkt. No. 40-6) ¶ 4; see also Cmplt. (Dkt. No. 1) ¶ 25)[2]

---

[2]  Because the Complaint repeatedly refers to the terms of the Addendum (see Cmplt. (Dkt. No. 1) ¶¶ 25, 40, 46, 59), the Addendum is integral to the Complaint and may be considered in resolving HTC's motion to dismiss.  See Johnson v. City of New York, No. 1:15-CV-8195-GHW, 2017 WL 2312924, at *3 (S.D.N.Y. May 26, 2017) ("[B]ecause Plaintiff makes repeated references to this document in her amended complaint, the Court may consider it in resolving Defendants' motion as a document incorporated by reference in, or integral to, the complaint.").

In an October 2017 email to Dr. Park, HTC objects to letters Plaintiffs sent to parties infringing on the Exclusive Vocoder Patent Rights, stating that Plaintiffs should not transmit such letters while the parties are "still discussing the amendment [to the Contract]." (Cmplt. (Dkt. No. 1) ¶ 33)  HTC also objects to WH Patent notifying third parties that they are infringing on the Exclusive Vocoder Patent Rights or stating that WH Patent is willing to negotiate a license for those third parties to use the Exclusive Vocoder Patent Rights.  (Id.)

In November 2017, WH Patent requested that HTC provide it with information necessary for the licensing and enforcement of the Exclusive Vocoder Patent Rights.  (Id. ¶ 27) HTC did not provide the requested information.  (Id.)

In the Complaint, Plaintiffs contend that HTC "is holding [them] hostage and unlawfully interfering with [their] ability to enforce the Exclusive Vocoder Patent Rights as envisioned by the express terms of the [Contract]."  (Id. ¶ 5; see also id. ¶ 61 (alleging that HTC has prevented "WiAV and WH Patent from conducting their business and seeking recoveries from third parties for their infringement of the Exclusive Vocoder Patent Rights")

## II.    PROCEDURAL HISTORY

The Complaint was filed on March 23, 2018 (Cmplt. (Dkt. No. 1)), and on December 13, 2018, HTC moved to dismiss under Fed. R. Civ. P. 12(b)(6).  (Notice of Motion (Dkt. No. 37))

## DISCUSSION

## I.    RULE 12(b)(6) STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  "In considering a motion to dismiss . . . the court is to accept as true all facts alleged in the complaint," Kassner v. 2nd Ave. Delicatessen, Inc., 496 F.3d 229,

237 (2d Cir. 2007) (citing Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals, 282 F.3d

83, 87 (2d Cir. 2002)), and must "draw all reasonable inferences in favor of the plaintiff." Id.

(citing Fernandez v. Chertoff, 471 F.3d 45, 51 (2d Cir. 2006)).

        Allegations that "are no more than conclusions[] are not entitled to the assumption

of truth," however.  Iqbal, 556 U.S. at 679.  A pleading is conclusory "if it tenders 'naked

assertion[s]' devoid of 'further factual enhancement,'" id. at 678, offers "'a formulaic recitation

of the elements of a cause of action,'" id., and does not provide factual allegations sufficient "to

give the defendant fair notice of what the claim is and the grounds upon which it rests." Port

Dock & Stone Corp. v. Oldcastle Northeast, Inc., 507 F.3d 117, 121 (2d Cir. 2007).  While legal

conclusions "can provide the complaint's framework, they must be supported by factual

allegations." Iqbal, 556 U.S. at 679.

        "In considering a motion to dismiss for failure to state a claim pursuant to Rule

12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to

the complaint as exhibits, and documents incorporated by reference in the complaint." DiFolco

v. MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir. 2010) (citing Chambers v. Time Warner,

Inc., 282 F.3d 147, 153 (2d Cir. 2002); Hayden v. County of Nassau, 180 F.3d 42, 54 (2d Cir.

1999)).  Additionally, "[w]here a document is not incorporated by reference, the court may

never[the]less consider it where the complaint 'relies heavily upon its terms and effect,' thereby

rendering the document 'integral' to the complaint." DiFolco, 622 F.3d at 111 (quoting

Mangiafico v. Blumenthal, 471 F.3d 391, 398 (2d Cir. 2006)).

        "On a motion to dismiss for breach of contract, courts look . . . at the contract

itself, which by definition is integral to the complaint." Axiom Inv. Advisors, LLC by & through

Gildor Mgmt., LLC v. Deutsche Bank AG, 234 F. Supp. 3d 526, 533 (S.D.N.Y. 2017) (citing

Interpharm, Inc. v. Wells Fargo Bank, Nat. Ass'n, 655 F.3d 136, 141 (2d Cir. 2011)).

## II.    ANALYSIS

In moving to dismiss, HTC argues that (1) WH Patent lacks standing, because it is

not a party to, or a third-party beneficiary of, the Contract (Def. Br. (Dkt. No. 38) at 19-22); and

(2) Plaintiffs' breach of contract claim fails as a matter of law, because HTC satisfied its

obligations under the Contract.  (Id. at 22-30)

Although standing is a preliminary question generally resolved prior to

considering a motion on its merits, in this case it is undisputed that Plaintiff WiAV has standing

to pursue its breach of contract claim.  Accordingly, this Court will first address Defendant's

argument that the Complaint does not state a claim under Rule 12(b)(6), and will then consider

whether Plaintiff WH Patent lacks standing.  See, e.g., Christa McAuliffe Intermediate Sch.

PTO, Inc. v. de Blasio, 364 F. Supp. 3d 253, 273 (S.D.N.Y. 2019), aff'd, 788 F. App'x 85 (2d

Cir. 2019) ("Because at least one plaintiff has standing, the Court may consider the case's

merits.") (citing Massachusetts v. E.P.A., 549 U.S. 497, 518 (2007)).

### A.    Whether the Complaint States a Claim

#### 1.    Applicable Law

"To state a claim in federal court for breach of contract under New York law, a

complaint need only allege (1) the existence of an agreement, (2) adequate performance of the

contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages."[3]  Harsco

---

[3]  The parties' dispute is governed by New York law.  The Contract provides that "[a]ny claim arising under or relating to this Agreement shall be governed by the laws of the State of New York."  (Contract (Dkt. No. 40-2) § 6(d))  Moreover, Plaintiffs argue that New York law applies (Pltf. Opp. (Dkt. No. 39) at 12-16), and HTC does not argue otherwise.  Accordingly, the Court applies New York law.

Corp. v. Segui, 91 F.3d 337, 348 (2d Cir.1996) (citing Tagare v. Nynex Network Sys. Co., 921 F.

Supp. 1146, 1149 (S.D.N.Y. 1996)).  "When interpreting a contract under New York law," the

court's "'primary objective is to give effect to the intent of the parties as revealed by the

language of their agreement.'"  Chesapeake Energy Corp. v. Bank of N.Y. Mellon Tr. Co., 773

F.3d 110, 113-14 (2d Cir. 2014) (quoting Compagnie Financiere de CIC et de L'Union

Europeenne v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 232 F.3d 153, 157 (2d Cir. 2000)).

"The words and phrases in a contract should be given their plain meaning, and the contract

should be construed so as to give full meaning and effect to all of its provisions."  Id. at 114

(internal quotation marks omitted) (quoting Olin Corp. v. Am. Home Assur. Co., 704 F.3d 89, 99

(2d Cir. 2012)).  "[A]ll parts" of the contract must be "reconciled, if possible, in order to avoid

an inconsistency."  Cruden v. Bank of New York, 957 F.2d 961, 976 (2d Cir. 1991).

### 2.    Analysis

Plaintiffs argue that HTC breached Section 6(e)(i) of the Contract by refusing to

transfer the Enforcement Rights to WH Patent unless Plaintiffs agreed to extra-contractual

conditions set forth in the Addendum.  (Cmplt. (Dkt. No. 1) ¶¶ 25, 40, 46, 59)  Plaintiffs also

claim that HTC breached the Contract by interfering with Plaintiffs' ability to exercise the

Enforcement Rights and by refusing to offer assistance that it was contractually obligated to

provide.  (Id. ¶¶ 5, 28, 33, 52, 54, 61-62)

HTC contends that it fulfilled its obligations under the Contract by signing the

Addendum, which grants Enforcement Rights to WH Patent.  (Def. Br. (Dkt. No. 38) at 10-11,

23)  HTC argues that Plaintiffs cannot – by virtue of their refusal to countersign the Addendum –

attempt to "hold HTC liable for an alleged breach entirely of their own making."  (Id. at 23)

HTC also denies that the Addendum contains extra-contractual terms, maintaining that it "merely reiterates what the [Contract] already establishes." (Id. at 27)  As for Plaintiffs' allegation that HTC refused to provide assistance to Plaintiffs' patent enforcement efforts – as the Contract requires – HTC contends that the Complaint's allegations are overly vague, and that it has no obligation to provide assistance, because the Enforcement Rights have not yet been transferred to WH Patent.  (Id. at 29)

Under the Contract, HTC is required to transfer the Enforcement Rights to an entity identified by Dr. Park – the "Identified Entity" – "[i]f fewer than three (3) Triggering Events . . . occur prior to June l, 2015."  (Contract (Dkt. Nos. 40-2, 40-3) § 6(e)(i))  It is undisputed that fewer than three Triggering Events occurred before June 2015.  (Cmplt. (Dkt. No. 1) ¶¶ 4, 23; Def. Br. (Dkt. No. 38) at 9, 16)  Accordingly, pursuant to the Contract, HTC must – at Dr. Park's request – transfer the Enforcement Rights to the Identified Entity.  (Contract (Dkt. Nos. 40-2, 40-3) § 6(e)(i))  On October 14, 2017, Dr. Park named WH Patent as the Identified Entity.  (Cmplt. (Dkt. No. 1) ¶ 24 & n.1)  HTC became obligated at that time to transfer the Enforcement Rights to WH Patent.

Nothing in the Contract authorizes HTC to condition the transfer of the Enforcement Rights on Plaintiffs' consent to new terms.  Nor does the Contract permit HTC to unilaterally modify the Contract.  (Contract (Dkt. No. 40-3) § 6(g) ("No amendments or modifications shall be effective unless in a writing signed by authorized representatives of both Parties."))

The Complaint adequately alleges that HTC has breached the Contract by requiring that WiAV consent to extra-contractual terms before HTC performs its obligation under the Contract to transfer the Enforcement Rights to WH Patent.  See, e.g., In re Best

Payphones, Inc., 432 B.R. 46, 58 n.8 (S.D.N.Y. 2010), aff'd, 450 F. App'x 8 (2d Cir. 2011) (breach of contract "'can be grounded upon a finding that the other party . . . has communicated its intent to perform only upon the satisfaction of extracontractual conditions'") (quoting SPI Commc'ns, Inc. v. WTZA-TV Assocs. Ltd. P'ship, 229 A.D.2d 644, 645 (3d Dep't 1996)); Halberstam as Tr. of Zupnick Family Tr. 2008 B v. Allianz Life Ins. Co. of N. Am., 349 F. Supp. 3d 164, 172 (E.D.N.Y. 2018) ("'Under New York law, insistence upon terms which are not contained in a contract constitutes an anticipatory repudiation thereof.' . . . 'If a party to a contract demands of the other party a performance to which he has no right under the contract and states definitively that, unless his demand is complied with, he will not render his promised performance, an anticipatory repudiation has been committed.'") (quoting REA Express, Inc. v. Interway Corp., 538 F.2d 953, 955 (2d Cir. 1976) and then In re Best Payphones, Inc., 432 B.R. at 54).

HTC argues, however, that Plaintiffs' breach claim fails because the Complaint does not set quote the extra-contractual language at issue – the clause in the Addendum stating "that WH Patent Holdings is not a third-party for purposes of the [Contract] or this Addendum." (Def. Br. (Dkt. No. 38) at 24; see Addendum (Dkt. No. 40-6) ¶ 4)  But in its opening brief, HTC quotes and discusses at length the extra-contractual language at issue.  (Def. Br. (Dkt. No. 38) at 25-28)  Accordingly, HTC has had "fair notice of what the claim is and the grounds upon which it rests."  Port Dock & Stone Corp., 507 F.3d at 121.

HTC further contends that, under the Contract as written, it is clear that WH Patent is not a third party, and therefore HTC is not – in insisting that Plaintiffs sign the Addendum – demanding that Plaintiffs assent to extra-contractual terms.  (Def. Br. (Dkt. No. 38) at 24-25)  But this argument misses the point:  HTC has no right under the Contract to insist that

WiAV enter into any additional agreement, addendum, modification or amendment before

transferring the Enforcement Rights to the Identified Entity.  HTC's obligation to transfer the

Enforcement Rights is triggered by (1) the fact that three Triggering Events did not occur prior to

June 1, 2015; and (2) Dr. Park's designation of WH Patent as the Identified Entity.  See Contract

(Dkt. Nos. 40-2, 40-3) § 6(e)(i).  HTC may not condition its performance on an additional term

not present in the Contract.

         As for HTC's argument that it did not have to offer the requisite assistance

because the Enforcement Rights have not yet been transferred, HTC's alleged breach is the

reason the transfer has not been effected.  HTC cannot rely on its own alleged breach to contend

that Plaintiffs' breach claim is not ripe.  See Utica Mut. Ins. Co. v. Clearwater Ins. Co., 906 F.3d

12, 23 (2d Cir. 2018) ("'[A] party to a contract cannot rely on the failure of another to perform a

condition precedent where he has frustrated or prevented the occurrence of the condition.'")

(quoting MHR Capital Partners LP v. Presstek, Inc., 12 N.Y.3d 640, 646 (2009)); Javier v. Beck,

No. 13CV2926, 2014 WL 3058456, at *10 (S.D.N.Y. July 3, 2014) ("'He who prevents a thing

from being done may not avail himself of the non-performance which he has, himself,

occasioned. . . .'") (quoting Realty Co. v. Tull, 127 N.E. 263, 266 (1920) (Cardozo, J.));

Willoughby Rehab. v. Webster, 134 A.D.3d 811, 815 (2d Dep't 2015) ("[A] claim of breach

cannot be defeated by a party who relies on a condition precedent which his or her own

nonperformance has prevented from occurring."); Kaplon-Belo Assocs., Inc. v. Tae Hee Kim,

145 A.D.2d 413, 414 (2d Dep't 1988) ("Where 'a promisor himself is the cause of the failure of

performance of a condition upon which his own liability depends, he cannot take advantage of

the failure.'") (quoting Amies v. Wesnofske, 255 N.Y. 156, 162 (1931)).

11

The Complaint also adequately alleges that HTC has interfered with Plaintiffs'

efforts to enforce their patent rights.  The Complaint asserts that in an October 24, 2017 email to

Dr. Park, HTC objected to Plaintiffs raising infringement claims with third parties who were

violating Plaintiffs' Exclusive Vocoder Patent Rights.  (Cmplt. (Dkt. No. 1) ¶ 33)  And in

November 2017, HTC refused to provide to WH Patent information and materials necessary for

the licensing and enforcement of the Exclusive Vocoder Patent Rights.  (Id. ¶ 27)  These

allegations are sufficient to survive a motion to dismiss.  See Mayor & City Council of

Baltimore, Md. v. Citigroup, Inc., 709 F.3d 129, 135 (2d Cir. 2013) ("'a complaint attacked by a

Rule 12(b)(6) motion to dismiss does not need detailed factual allegations'") (quoting Towmbly,

550 U.S. at 555).

Finally, HTC argues that Plaintiffs' request for damages should be dismissed,

because "Plaintiffs fail to provide any detail to support their damages claim.'"  (Def. Br. (Dkt.

No. 38) at 30)  Plaintiffs have alleged that HTC has "prevented WiAV and WH Patent from

conducting their business and seeking recoveries from third parties for their infringement of the

Exclusive Vocoder Patent Rights," which has led to "significant losses."  (Cmplt. (Dkt. No. 1)

¶¶ 60-61)  The Complaint alleges damages of more than $75,000.  (Id. ¶ 11).  The law does not

require Plaintiffs to provide a detailed accounting of their damages at this time.  See Next

Commc'ns, Inc. v. Viber Media, Inc., No. 14-CV-8190 (RJS), 2016 WL 1275659, at *8

(S.D.N.Y. Mar. 30, 2016) ("Although the Amended Complaint does not specify a dollar amount

of damages for the breach of contract claim, it does provide factual support for Plaintiffs' claim

that Defendant harmed them.").  At the motion to dismiss stage, a "[g]eneral pleading that

[plaintiff] suffered damages is sufficient."  Id. (quoting Xcellence, Inc. v. Arkin Kaplan Rice

LLP, No. 10-cv-3304 (HB), 2011 WL 1002419, at *5 (S.D.N.Y. Mar. 15, 2011)); see also, e.g.,

12

Fed. Hous. Fin. Agency v. WMC Mortg., LLC, No. 13 CIV. 584 (AKH), 2013 WL 7144159, at

*1 (S.D.N.Y. Dec. 17, 2013) ("[Defendant's] request to strike the various forms of relief,

specifically money damages, is premature and should not be decided on a motion to dismiss.");

Varghese v. China Shenghuo Pharm. Holdings, Inc., 672 F. Supp. 2d 596, 611 (S.D.N.Y. 2009)

("[D]amages issues are not properly resolved at the motion to dismiss stage.").

To the extent that HTC contends that the Complaint fails to state a claim, its

motion to dismiss will be denied.

### B.      Whether WH Patent Lacks Standing

#### 1.      Applicable Law

"The 'prudential standing rule . . . normally bars litigants from asserting the rights

or legal interests of others in order to obtain relief from injury to themselves.'"  Rajamin v.

Deutsche Bank Nat. Tr. Co., 757 F.3d 79, 86 (2d Cir. 2014) (quoting Warth v. Seldin, 422 U.S.

490, 509 (1975)).  "Of relevance here, a plaintiff who is neither party to nor a third-party

beneficiary of a particular contract typically lacks prudential standing to bring a suit aimed at

enforcing the contract's terms."  Aponte v. Diego Beekman M.H.A. HDFC, No. 16-CV-8479

(JPO), 2019 WL 316003, at *7 (S.D.N.Y. Jan. 24, 2019) (citing Hillside Metro Assocs., LLC v.

JPMorgan Chase Bank, Nat'l Ass'n, 747 F.3d 44, 48-49 (2d Cir. 2014)); see also, e.g., Music

Royalty Consulting, Inc. v. Reservoir Media Mgmt., Inc., No. 18 Civ. CIV 9480 (CM), 2019 WL

1950137, at *10 (S.D.N.Y. Apr. 17, 2019) ("Under New York law, only parties to, or intended

third-party beneficiaries of, a contract have standing to enforce it.") (citing Rajamin, 757 F.3d at

86).

"[T]o recover as a third-party beneficiary of a contract, a claimant must establish

that the parties to the contract intended to confer a benefit on the third party."  Subaru

Distributors Corp. v. Subaru of Am., Inc., 425 F.3d 119, 124 (2d Cir. 2005) (quoting State of

Cal. Pub. Employees' Ret. Sys. v. Shearman & Sterling, 95 N.Y.2d 427 (2000)).  Doing so

requires the third party to show that "'a binding contract exists between other parties; that this

contract was intended for his benefit; and that the benefit to him was direct rather than

incidental.'"  Melvin v. Cty. of Westchester, No. 14-CV-2995 (KMK), 2019 WL 1227903, at

*15 (S.D.N.Y. Mar. 15, 2019) (quoting Internationale Nederlanden (U.S.) Capital Corp. v.

Bankers Tr. Co., 261 A.D.2d 117, 122 (1st Dep't 1999)).

### 2.    Analysis

HTC argues that WH Patent cannot sue as a third-party beneficiary because of

Section 6(n) of the Contract – the "No Third-Party Beneficiary" provision.  (Def. Br. (Dkt. No.

38) at 19-22)  This provision states that "[n]othing in this Agreement shall be construed to give

rise to any obligation on any party hereto for the benefit of a third party or to confer any rights on

any third party."  (Contract (Dkt. No. 40-3) § 6(n))

Courts applying New York law generally enforce such clauses, even when

contracts provide for obligations to third parties.  See, e.g., Wilson v. Dantas, 746 F.3d 530, 537

(2d Cir. 2014) (applying New York law and stating that "courts within this Circuit have

consistently held that 'even where a contract expressly sets forth obligations to specific

individuals or categories of individuals, those individuals do not have standing to enforce those

obligations by suing as third-party beneficiaries when the contract contains a negating clause'")

(quoting In re Lehman Bros. Holdings Inc., 479 B.R. 268, 275-76 (S.D.N.Y. 2012)).

Plaintiffs argue, however, that such "negating clauses" are not enforced "where,

as here, a contract sets forth particularized rights of an intended contractual beneficiary."  (Pltf.

Opp. (Dkt. No. 39) at 7)  In support of this assertion, Plaintiffs cite to MPEG LA, LLC v.

Samsung Elecs. Co., Ltd., 166 A.D.3d 13 (1st Dep't 2018) and Diamond Castle Partners IV

PRC, L.P. v. IAC / InterActivecorp, 82 A.D.3d 421 (1st Dep't 2011).  (Id. at 19-20)  In both

cases, the First Department refused to enforce "boilerplate" provisions excluding third-party

beneficiaries.  See MPEG, 166 A.D.3d at 16-17 ("[W]e reject defendant's contention that

plaintiff does not have standing to sue for breach of the [Agreement Among Licensors ('AAL')]

because it is not a party to that agreement.  Plaintiff is an intended third-party beneficiary of the

AAL, as that agreement explicitly refers to plaintiff and grants it enforceable rights.

Accordingly, the AAL's boilerplate exclusion of third-party beneficiaries does not apply to

plaintiff. . . .") (citing Diamond Castle, 82 A.D.3d at 422); Diamond Castle, 82 A.D.3d at 422

("The motion court properly construed the agreement as granting plaintiffs enforceable rights

that were not extinguished by the boilerplate no third-party beneficiaries language.") (internal

quotation marks omitted).

              Plaintiffs' reliance on MPEG and Diamond Castle is misplaced.  Although in

MPEG the First Department found that a contract's negating clause did not deprive the plaintiff

of standing, the parties' dispute concerned royalties owed under a different agreement to which

the plaintiff was indisputably a party.  MPEG, 166 A.D.3d at 17 ("[T]he dispute between the

parties concerns defendant's failure to pay royalties under the [Patent Portfolio License].

Plaintiff is a party to the [Patent Portfolio License] with the power to enforce defendant's royalty

obligations.").

              In Diamond Castle, the contract containing the negating clause did not define the

term "parties," and the First Department concluded that plaintiffs could be deemed "parties"

under the contract.  Diamond Castle, 82 A.D.3d at 421 ("The term "parties," though undefined,

was used in various clauses in the agreement to include nonsignatory affiliates of the buyer and

seller."). Unlike in <u>Diamond Castle</u>, the Contract here specifically defines the "Parties" as

WiAV and HTC. Accordingly, the argument that WH Patent is not a "third party" for purposes

of the negating clause is at odds with the Contract's plain language. (Contract (Dkt. No. 40-2) at

2); <u>see also</u> <u>Sudarsan v. Seventy Seven Energy Inc.</u>, No. 17 Civ. 2342 (GBD) (GWG), 2018 WL

1088004, at *4-5 (S.D.N.Y. Feb. 6, 2018), <u>appeal withdrawn</u>, 2018 WL 2735397 (2d Cir. May

10, 2018) ("In <u>Diamond Castle</u>, . . . [t]he . . . Appellate Division upheld the lower court's denial

of defendant's motion [to dismiss for lack of standing] on the basis that the term 'parties' was

undefined. . . . [C]ourts have . . . refused to interpret <u>Diamond Castle</u> to mean that third parties

automatically have standing to enforce an agreement, even in the presence of a negating clause,

merely because the agreement grants them certain benefits or rights. . . ."); <u>In re Lehman Bros.</u>

<u>Holdings Inc.</u>, 479 B.R. at 277 ("[I]n permitting the plaintiffs to sue despite the negating clause,

the court in <u>Diamond Castle</u> . . . relied upon the fact that the plaintiffs could be construed as

'parties' to whom the negating clause would not apply. . . .").

　　　　In sum, <u>MPEG</u> and <u>Diamond Castle</u> are distinguishable, and this Court will

enforce the negating clause and dismiss WH Patent's claim for lack of standing. In doing so, this

Court acts in accordance with the well-settled principle that "'even where a contract expressly

sets forth obligations to specific individuals or categories of individuals, those individuals do not

have standing to enforce those obligations by suing as third-party beneficiaries when the contract

contains a negating clause.'"[4] <u>Wilson</u>, 746 F.3d at 537 (quoting <u>In re Lehman Bros. Holdings</u>

---

[4] Plaintiffs' reliance on <u>Benipal v. Herath</u>, 251 A.D.2d 933 (3d Dep't 1998) is also misplaced.
(Pltf. Opp. (Dkt. No. 39) at 20) There, the Third Department declined to enforce a negating
clause because the contract containing that clause was later "materially modified." The parties
"establish[ed] a new agreement" which "supplant[ed]" the clause. <u>Benipal v. Herath</u>, 251
A.D.2d at 934 ("where the contract has been materially modified, the modification establishes a
new agreement between the parties which supplants the affected provisions of the underlying

Inc., 479 B.R. at 275-76)); see Melvin, 2019 WL 1227903, at *15 (S.D.N.Y. Mar. 15, 2019)

("'Under New York law, the effectiveness of a negating clause to preclude third-party

beneficiary status is well-established:  "Where a provision exists in an agreement expressly

negating an intent to permit enforcement by third parties, that provision is decisive."'") (quoting

Barton v. Smartstream Techs., Inc., No. 16-CV-1718, 2016 WL 2742426, at *5 (S.D.N.Y. May

9, 2016) (in turn quoting India.com v. Dalal, 412 F.3d 315, 321 (2d Cir. 2005)); Morse/Diesel

Inc. v. Trinity Industries, Inc., 859 F.2d 242, 249 (2d Cir.1988) ("Under New York law, where a

provision in a contract expressly negates enforcement by third parties, that provision is

controlling.").

## CONCLUSION

For the reasons stated above, Defendant HTC's motion to dismiss (Dkt. No. 37) is

granted as to WH Patent Holdings, Inc. but is otherwise denied.  The Clerk of Court is directed

to terminate the motion.  By **May 15, 2020**, the parties will submit a joint status letter containing

a proposed case management plan.

Dated: New York, New York
       May 7, 2020

SO ORDERED.

_____
Paul G. Gardephe
United States District Judge

---

agreement while leaving the balance of its provisions unchanged").  Unlike in Benipal, the contract at issue here has not been modified so as to supplant the negating clause.